Good morning, Your Honors, and may it please the Court, my name is Michael DiGiacomo. I, along with my co-counsel, Ms. Varela Gradel, am a law student with the University of Arizona College of Law's Pro Bono Appellate Project. We are supervised by Professor Willie Jordan Curtis, and we will be arguing on behalf of the appellant, Ms. Morris. I would like to reserve two minutes of the allotted time for rebuttal. Counsel, just watch the clock as it counts down. Thank you. I will begin by discussing the District Court's improper dismissal of Ms. Morris' breach of contract and estoppel claims. And I will discuss the District Court's error in denying Ms. Morris' Rule 60B request for relief from judgment. My colleague, Ms. Varela, will discuss the District Court's improper exclusion from evidence of Ms. Morris' chart and the District Court's error in denying Ms. Morris' motion for a protective order. The District Court erred in dismissing Ms. Morris' contract and estoppel claims. These claims were dismissed on a 12B6 motion early in the case. Slow down, Counsel. You're reading. Take it easy. The claims were dismissed from her original complaint as preempted by the Copyright Act and dismissed from her first amended complaint without explanation. Because both of these claims contain an extra element, this Court should reverse the dismissal and remand these claims to the District Court. Ms. Morris wrote a nonfiction work titled Jesus Augustus, From Imperial Cult to Christianity. Counsel, the plaintiff succeeded on her implied contract claim and received damages. Am I right? That's correct. Okay. Who dismissed claims for breach of contract and estoppel? Assuming that, for the sake of this question, that those claims could have gone forward, isn't the award of damages, wouldn't it have been duplicative? So what's the point, I guess, is my question. The point is that I don't believe the award of damages would have been duplicative. I think that if these claims had proceeded, the damages may have been different. Why? I mean, because these are all essentially arguments that there was either a real agreement or an implied agreement or you can't deny that there's an agreement, and if you breach that, I get damages for the agreement or the supposed agreement or the substitute for an agreement. So why would the measure of damages be any different? And so why would it make any difference even if you had had those claims in the case? I think the other issue involved in the breach of contract and estoppel claims was the production of this novel based on Ms. Morris' nonfiction work, which the defendants agreed to express under the contract. I think that because that novel was never produced, the defendants breached that contract, that evidence would have been elicited and discussed, and it could have increased the damage award or it could have resulted in a different result. I'm sorry. As I was saying, upon completion of the work, Ms. Morris entered a contract with the defendants where the defendants were to create a novel based on her nonfiction work. The mutual expectation under this express contract was that Ms. Morris would tender her nonfiction work to the defendants solely so that they could prepare a novel based on her work. The defendants were then to quit-claim this novel into Ms. Morris' name, and the novel was to be released alongside her nonfiction work as a promotional tie-in. Ms. Morris held a perennial bargain, and the defendants have not done that. Instead, the defendants have since published their own novel based on the same subject matter as Ms. Morris' work and bearing a noticeable similarity to the novel contemplated. Okay, so what is your complaint? This is a Copyright Act complaint? What is your complaint with respect to this issue? With respect to this issue, it's a breach of contract claim separate from copyright. Okay, so what did we do with our Monts case and the Destiny issue? Well, in Monts, this Court found that an extra element was pleaded where the implied contract conditioned use of the work on the granting of a partnership interest in the work's production. But you won on the implied contract claim. So I think Judge O'Scanlan is asking why the two claims that you're talking about, the actual breach of contract allegation and the estoppel claim, where is the extra element in those claims under Destiny? I would contend that the extra element is the promise of a fictional work that was to be delivered to Ms. Morris under the contract. Ms. Morris submitted her work to the defendants. The contract required payment by Ms. Morris or on Ms. Morris' behalf to the defendants, and in exchange the defendants would produce this novel and quit claiming it in her name. Isn't that why she got the $70,000, because they didn't do the novel? Yes, Your Honor, I believe it is. So it seems to me that in the contract claim you're alleging that she delivered her copyrighted work to the defendant and that the breach was defendants' misuse of her work without authorization. And if that's the essence of the claim, why isn't that duplicative of a copyright claim without an extra element? Because I think the mutual expectation of delivery of the novel, that would be the expectation of compensation under this contract. Well, but it's a copyrighted novel. That's the whole premise. The copyrighted work, her nonfiction work, is delivered, right? Correct. The nonfiction work is delivered, and she expected, or both parties expected, that they would provide to Ms. Morris, or the defendants would provide to Ms. Morris a novel based on that nonfiction work. In the other cases in the Ninth Circuit, Monts, Grosso, Landsberg, there was an implied contract where the plaintiff, who was tendering their work to a defendant, expected compensation, and in those cases it was for sale, except for in Monts where it was for a partnership interest. I think that those cases are analogous here. The expectation of compensation was the actual production of the novel, not the protection of the idea, which would be preempted by the Copyright Act. Further, this Court has afforded heightened protection to contract claims stemming from the entertainment industry. This Court stated in B'Nabi Warner Brothers that contract law is the most significant remaining state law protection for literary or artistic ideas. The Court has recognized the need for heightened protection regarding these type of contracts for situations just like this. The contract here, which is a nonfiction work, was entered into for the protection of both parties. If Ms. Morris is not allowed to seek recovery when those promises contained in the contract are broken, then this contract has no meaning. I would like to now discuss the Rule 60b-3 claim. Ms. Morris filed a motion after trial for relief from judgment based on fraud, misrepresentation, or misconduct by the defendants. What's your showing of fraud? The defendants had published a novel after this case ended that was very similar to the novel contemplated in the contract here. Ms. Morris, during discovery and trial, had strong suspicions that the defendants were withholding parts of this novel or were not completely honest about the novel. But what's your showing of fraud? Where is the – what's your evidence? The only evidence we can point to is the production of the novel after the fact. Just the mere fact of the publication or the production of it? Yes, Your Honor. Is that enough to get you past the threshold? I know that in De Siraco, the court required clear and convincing evidence that the jury verdict was obtained through fraud. I think that there's a sufficient connection between the novel that was produced after the case concluded and the novel contemplated under this contract and addressed during trial to pass the threshold, Your Honor. Okay. Doesn't 60B3 require fraud in the integrity of the judgment that you seek to set aside? Not fraud in the inducement of a contract or fraud that's been pleaded, but fraud in how the case was tried and how the case was arrived at, judgment was arrived at? Yeah. The moving party on a Rule 60B3 motion would have to prove that they were prevented from fully and fairly presenting the case. What's the evidence that Ms. Morris was prevented from fully presenting her case? The evidence would be that Ms. Morris and her counsel at trial didn't have full access to the novel that was being published or produced both on her behalf and that the defendants were producing, allegedly wholly separate from her novel. And why didn't they have access to it? Did they exercise discovery rights? They did exercise discovery rights. Ms. Morris had suspicions during discovery and there was a lot of contention at the time that not all of the... Did you produce some evidence that the defendants had hidden this novel and had entered discovery requests falsely? No, Your Honor. Pardon me. In summation, contract, whether expressed or implied, is a promise. Ms. Morris entered the contract here with the defendants in order to protect herself and her work should that relationship with the defendants break down. The jury should have been given the chance to hear both the contract and the estoppel claims and decide whether they merited recovery. Further, the district court improperly denied Ms. Morris' Rule 60B3 motion. This court should reverse the dismissal of the contract and estoppel claims and remand to the district court. Thank you, counsel. Your side will reserve the remainder of the time. Thank you. Thank you. We'll hear from the others. I think they were... Pardon me, Judge. I'm sorry. I think they were intending to have the other student argue. I'll present. All right, very well. You may do so. Sorry to interrupt, but she was... Good morning, Your Honors. May it please the court, my name is Rosamond Varela-Gradel and I will be discussing why the district court abused its discretion in not allowing the summary chart and how that error was prejudicial to Ms. Morris. Additionally, I will be discussing how the district court erred in dismissing the motion for protective order. On the summary chart, although the court said it was inadmissible as an exhibit, she was allowed to use it to support her testimony at trial as a pedagogical device. That is correct, Your Honor. So why isn't that perfectly permissible? Actually, her testimony was a lengthy two-day testimony, and I think that it might have been too long where she went off on tangents and she didn't fully explain or demonstrate her side in regards to this copyright infringement claim. And this chart, this summary chart would have actually done the opposite of what Rule 403 was meant to prove. And in this case, this chart would have helped distilled the voluminous information that her testimony was. It would have helped the jury understand her position in her copyright infringement claim. I don't know. It's 114 pages or something like that. It's pretty voluminous and tedious all by itself. Well, Your Honor, I believe it was 90 pages what this summary chart was, but it also, she is the expert in her unique process, and she would be the one to know exactly how her nonfiction work might have been used by this novel. And so she outlines over 150 different methods in which her unique expression was used, and having that information for the jury to view would have been a lot. She can testify to all of that. She did testify to that. She testified to that, yes. And the chart that she produced had no independent way to come in as evidence other than as illustrative of her testimony, right? Correct. But I also believe that it would have mitigated a lot of the other evidence that was allowed, which was the four exhibits that showed the jury where this novel got all of its sources. These four exhibits, aside with this side-by-side comparison, would have given the jury a bigger picture and a clearer picture for them to make their own decision if, in fact, they used these sources or if some of the ideas that she came up with were actually used in this novel. Was the chart marked as an exhibit? It was marked as an exhibit. Was it displayed to the jury while Ms. Morris was testifying? Should it go back and forth to the chart? I don't know. It could have been done that way. The only thing that didn't happen was that it wasn't admitted into evidence, right? I believe that she was able to rely on it, but I'm not sure if it was presented in court. So why isn't the chart simply redundant of her testimony? It is not redundant, Your Honor, because it is a much simpler way for the jury to understand her testimony. That tells me that Ms. Morris wasn't a very good witness. That could be in fact. And that tells me that her attorney on direct examination wasn't a very good attorney because he didn't put her questions right. And that could be in fact. And we have to realize that this is Ms. Morris's lifeline. It took her over two decades to come up with this nonfiction work. And when she had the opportunity to express and give her side of the story, she might have went off on tangents. And this is why this chart is so important, because it actually clearly showed the jury her position in this claim. And because it was a key exhibit and the fact that the judge decided that it was not going to be admitted under Rule 403, the judge did not engage in a balancing test. And we don't know what his insight was for the reason why he didn't allow this chart. And had we known, had Ms. Morris known what the reason might have been, she could have rectified the chart to fix it to a way that the judge might have allowed it in. And because the judge, because this is a summary, because this summary chart is a key exhibit, it was highly relevant. It was not prejudicial. And we don't know what balancing analysis he decided not to accept this chart. He abuses discretion. And this is not harmless error. This is not harmless error because if there's a slight chance that this information, that this chart, might have allowed the jury to decide in her favor, if there's that slight possibility, it is not harmless error, Your Honor. And for that reason, we ask that the court reverse and remand for retrial on that claim. Further, in regards to the protective order, the district court should not have dismissed this claim because it was a reasonable request. Good cause was present according to the Federal Rules of Civil Procedure, Rule 26. And there was reasonable efforts made by Ms. Morris's attorney to meet and confer. And what is your showing of harm with respect to that? If this protective order had been granted, her work, like I've mentioned previously, it took her so long that she put all her energy, her efforts for over two decades, would have been protected and would have been sealed from public access from both the public and from both. Now, I understand that side of the equation, but here the court denied the protective order. And I'm asking you, what was the harm to your client in the denial of the protective argument? What harm did your client suffer as a result of that denial? She didn't get to be heard on the merits of her claim. It was just dismissed based on the defendant's motion. But is that traceable to the denial of the protective order? I'm not sure, Your Honor, on that part. What we would like on this situation is for this protective order to be retroactively granted because there's no binding precedent that does not allow that, that wouldn't allow that. You understand, though, that there is a very strong presumption in favor of public access to all court records and all court proceedings. It's kind of a linchpin of our justice system, correct? Correct. So what are the factors that satisfy the heavy burden to show good cause to seal this case from public view, where it's your client's choice to bring the case to begin with and there are no lives at stake or children to be shielded from harm or something like that? I believe what she wanted to be sealed was just her nonfiction work, just that book is what I believe that she wanted to be sealed. But that would require sealing everything because she's brought a claim, here's my book and you guys are infringing my copyright in this book and breaching various other agreements implied or actual with respect to this book. So what remains to be public? Well, Your Honor, shortly after the judge granted the opposing party's order for protective order and sealed their book that wasn't finished. And it didn't seem to affect much of the outcome of the case, you know, of the outcome of the case. But the difference is your client, it's like somebody who brings an action for personal injury. They bring their physical condition into the courtroom and something that is otherwise private that they now have to reveal in order to obtain damages. And so it's different to be the defendant who's brought into court unwillingly. That is correct, Your Honor. But because this is a book that she has gone through the extents of making sure it's copyrighted, she's gone to the extent that she was so worried that her work was going to, that was copied or was... But then she can bring another infringement action. It is copyrighted. She's not risking anything that isn't already risked. Yeah. This is one area in which she, this is one claim that she holds dear to her heart, that she finds that having this document sealed, I guess, eases her and makes her feel better in a sense that to know that it's protected from the public domain. Counsel, you're down to less than a minute for your side, so you probably... Yes. Thank you, Your Honor. And I will, when we get to rebuttal, ask the deputy clerk to reset for a full minute. I'm sorry. Thank you very much. You're very welcome. Thank you. We'll hear from the other side. May it please the Court, my name is Richard Rosenthal for the appellees and cross-appellants. I guess I'll address first the issues that are raised by the appellant. So I represent Ken Atchity, Writer's Lifeline, Atchity Entertainment and Sonic Age. First, I'd like to address the claim that the district court erred in dismissing the sixth and tenth causes of action to the First Amendment complaint. I think there's some confusion because the sixth cause of action is not a breach of express contract between any of the defendants and Ms. Morris. It was a third-party beneficiary contract to which she was not a party. So in terms of the Mons analysis and the Desney analysis, the language that they had added was an allegation that the defendants threatened not to complete the derivative work in order to procure terms for the third party beneficiary contract. And that's not an additional element of an implied agreement or implied understanding between her and any of the parties. And the district court properly found that that was not enough to avoid preemption. As for the tenth cause of action in the First Amendment complaint, the additional element which was alleged was that Morris stood to reap enormous financial gains and monetary payments through their preparation and marketing of the derivative work through traditional media, including a novel, eventual screenplay and motion picture. So this also does not concern any implied understanding or agreement, which would constitute the Desney-type claim, as was the case in Mintz. So the promissory district court did not err in dismissing the promissory estoppel claim. If those claims had not been dismissed, in your view, would there be additional or different damages available that could have been avoided? And were available in the implied contract claim? Absolutely not. The breach of implied contract claim was the classic Desney-type claim. No, I know it was. So that would have been the best claim that they had to prove their damages, and the damages would not have been any different on any, even a breach of express contract claim had that been not dismissed. I don't think the damages would have differed. I mean, that was the essence of her contractual argument, whether it was express or implied. And as for the chart, I think it's clear that it was properly excluded. It contained dozens of pages of hearsay, dozens of pages of attorney argument, dozens of pages of references to documents, witnesses and testimony, which were neither introduced nor admitted at trial. And since it was not solely based on evidentiary facts, but rather was compendium of attorney argument, it was properly excluded. Now, I think that leads into the argument about the withholding of evidence. Because if you look at the chart, it refers to hundreds of pages of the historical work and compares it to hundreds of pages of the novel. So where the notion comes that they didn't have access to hundreds of pages of novel when they put together a chart. That refers to hundreds of pages of the novel and does a detailed analysis of what's in those hundred pages never made any sense to me. I thought their claim was that they had access to some, but that there was more that they didn't have access to. I may be misremembering that, but wasn't that... I mean, the novel was unfinished and it was not completely edited, but the copyright issue was the same. I mean, the fact that the novel may have been edited from those pages did not change the fact that she was contesting that what was contained in those pages infringed on her copyright. And, of course, there was no... Whatever existed at the time was provided to her. And then the protective order, I have to say that I don't... I don't have an opinion on it. The copyright case is, of course, my client's major concern. And that was a claim by the appellant that her unpublished scholarly work was... Which was called Jesus Augustus, was infringed upon by the appellee's novel, which was called The Ashes of Christ, The August God, which was a fictional work in the style of Dan Brown's The Da Vinci Code, which was based on the... Her book was based on the theory that Jesus Christ was really Caesar Augustus. So both works contained a similar idea, but one was an unpublished historical work and the other was an unpublished novel, which took place in modern times. And there was no question that there was access. No, no, access was never the issue, but one was... You had, what, about a six-day trial on whether the protectable elements of the two were substantially similar or not. Absolutely, and that's what the trial dealt with at all. So there was substantial evidence, and in the two pages that appellant has briefed on the copyright issue, they haven't referred to really any evidence at all that my client copied the work. Ours, it's not even a retelling, it's not even a historical retelling of her facts, because she's doing historical research set several thousand years ago, and my client has a contemporary novel, which is set in present day. So it's not one of these cases like Amistad or other cases where there's a film that retells a historical story, and somebody who's written a nonfiction work telling that historical story says that they're similar. This is not even that situation, we're not retelling the story that she sets forth in her historical manuscript. So as I've set forth in my brief, the testimony was that all of the characters were created by my clients, all of the sentences were written by my clients, the plot was written by my clients, and there was no testimony by her that she made any contribution in terms of dialogue, moods, settings, pace, characters, or sequence of events to the novel. So at trial, as reflected by the lack of factual evidence in the brief, the plaintiff failed to show substantial similarities between the works, the jury reached the correct verdict, and there exists no factual legal basis to overturn it. The second issue that I wanted to address is the district court's denial of the motion for judgment as a matter of law with respect to the breach of implied contract claim. Sotomayor Wasn't that just a classic DESNY claim? You said earlier in your own argument, well, this isn't like an implied contract claim, which is a classic DESNY claim. So why isn't that perfectly proper? I'm just focusing on the damages question, because my position is that the court should have granted my motion for judgment, because there was no evidence of damages. Is your argument that there is no viable claim, or simply that in your view there was a failure of proof as to the amount of damage? I think there was a viable claim at this point. That's my position, but I do not believe that the damages were other than speculative. And so it has to be clearly unsupported, right, for you to win. Yes, absolutely. There was no evidence that the novel hadn't been published. It hadn't been sold. There were no advances. It hadn't been sold. Hatchett, he testified that he thought the novel could have garnered a seven-figure advance. Reed testified that he has paid $100,000 for a completed novel. The plaintiff testified that Reed promised her 15% of the revenue from sale of the novel. And if you put all that information together, why isn't the jury's estimate supported by evidence? My position is that their testimony is conjecture, hypothetical, speculative, contingent possibilities, and doesn't really even pertain to the amount of money that she would personally gain if one of those things happened. Well, she gained 15% of the revenues, and then there's an estimate from experienced people about what the revenues might be. Okay, well, I think that their testimony was not in the nature of estimates, but rather, as I said, just speculative conjecture. So my position is that there really was no expert testimony or any other testimony as to what the value of her loss was in terms of the breach of implied contract. Was the estimate of seven figures from your defendant? It was from my defendant, but it didn't have it. Isn't that an admission of a party litigant that doesn't require the opinion rule to be applied to it? I don't really see it as an admission. I see it as a guess or a prediction of something that could happen in the future. I just don't see that as hard evidence. So let me move on to the third major issue, which was the denial of the Appellee's Cross-Appellant's Motion for Attorney's Fees. And I believe that the court ---- The court applied Fogarty, right? It knew what the right factors were to consider? Well, it stated that I had to show ---- Well, that's not my question. Did the court understand that it was supposed to apply factors such as those set out at Fogarty in determining whether to award fees? No, I think the court had that understanding, but I don't think that they did that. Okay, so it didn't make a legal error in terms of saying I have to or I'm not allowed to or something like that. So what is wrong in this hard-fought case with the court's ultimate conclusion that this was not a frivolous case and it was not a case that was motivated by bad faith, and that it otherwise did not justify fees to the defense? After all, she won on her implied contract claim, and there was this lengthy trial, and so why was it objectively unreasonable for her to bring the case or in bad faith or any of those things? Well, I mean, you know, we feel that she had no basis for bringing the case, but I also again feel that ---- She had a copyright. You had access. It's not one of those cases where someone imagines that somebody must have somehow picked the lock on their house and found their secret, you know, manuscript or something. It seems more substantial than that. Well, again, I mean, my position is that I don't have to show frivolous or bad faith in order to be awarded attorney's fees. I don't believe that's the standard that's in Fogarty. And what Fogarty says is that the defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent as the plaintiffs are encouraged to litigate meritorious claims of infringement. So I think that I should be held to the same standard as a defendant. What's our standard of review? Is it ---- I believe it's abuse of discretion. Abuse of discretion. Abuse of discretion. I know that's a tough standard, but this is the claim that I'm making. So I'd like to reserve the rest of my time. Reserve the rest of your time? For his cross appeal, I assume. Well, I have a cross appeal, so my response is ---- Which I see. Well, very well. Very well. Thank you, counsel. I may not have any further argument. Very well. Thank you, counsel. Thank you. Counsel? Thank you, Your Honor. Michael DiGiacomo again for the appellant. I believe as far as the Rule 60b-3, I'm going to address just a few points quickly. As far as the Rule 60b-3 motion goes, the chart that we've discussed would have shown evidence of possible fraud. The chart would show the multiple uses by the defendants of Ms. Morris' work. Additionally, the chart, although lengthy, distilled the facts from Ms. Morris' testimony. It might not have been as artfully phrased as it could have been, but it was better than two days of extensive testimony and could have allowed the jury a clearer picture of what was going on. Your next point? As far as the harm under not receiving the protective order, the defendants did later produce a novel based on or very similar to Ms. Morris' nonfiction work, and Ms. Morris lost the opportunity to do that herself because the novel wasn't or because the nonfiction work was not protected. I see it's the end of my time. Thank you, Your Honors. Thank you very much, counsel. Mr. Rosenthal, do you see any need for further argument? No. Very well. The case just argued will be submitted for decision, and the Court will adjourn. Before adjourning, excuse me for just a moment, on behalf of the Court, I would like to express our appreciation to the University of Arizona Law School, to Professor Jordan Curtis, and to the students who briefed and argued this case very well today. Thank you very much.
judges: O'scannlain, Graber, Bea